

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

JULIAN MURPHY,

    Plaintiff,

v.                                                                                    Civil Action No. 3:25-ap-03007

PENNYMAC LOAN SERVICES LLC, and
SENECA TRUSTEES, INC.,

    Defendants.

### MEMORANDUM OPINION SUPPLEMENTING ORDER GRANTING PENNYMAC LOAN SERVICES, LLC'S MOTION TO DISMISS ADVERSARY PROCEEDING

    This matter came before the Court upon a *Motion to Dismiss* [dkt. 9] filed by Defendant Pennymac Loan Services, LLC ("Pennymac") on July 28, 2025, and joined by Defendant Seneca Trustees, Inc. ("Seneca") on August 14, 2025 [dkt. 16]. Plaintiff Julian Benjamin Murphy ("Plaintiff") filed his *Combined (1) Response in Opposition to Defendant Pennymac Loan Services, LLC's Motion to Dismiss and (2) Reply to Defendant Seneca Trustees, Inc.'s Answer* [dkt. 13] on August 5, 2025, and Pannymac filed its *Reply in Support of its Motion to Dismiss* [dkt. 15] on August 12, 2025.  Subsequently, on August 18, 2025, Plaintiff filed a *Sur-Reply in Opposition to Defendant's Motion to Dismiss* [dkt. 17], and then on August 20, 2025, a *Supplemental Memorandum of Law in Support of Motion to Require Proof of Counsel Authority and Opposition to Defendant's Motion to Dismiss* [dkt. 25]. A hearing was held on Pennymac's *Motion to Dismiss* on August 21, 2025 (the "Hearing"). Appearing in-person at the Hearing was Plaintiff, Chapter 7 Trustee Janet Smith Holbrook, Lakyn D. Cecil as legal counsel for Seneca, and Bryan N. Price as legal counsel for Pennymac. Based upon the written submissions of the parties and arguments at the Hearing, the Court did express its intent to grant Pennymac's

1

*Motion to Dismiss* [dkt. 9], and on August 29, 2025, the Court entered its *Order Granting Defendants Pennymac Loan Services, LLC's Motion to Dismiss Adversary Proceeding* directing Pennymac to submit a proposed order within fourteen (14) days of the Hearing and reserving the right to supplement its Order with a memorandum opinion.

WHEREFORE, having fully considered Pennymac's *Motion to Dismiss* and supporting legal memorandum, Plaintiff's *Complaint*, Plaintiff's briefs in opposition to Pennymac's *Motion to Dismiss*, and oral argument of the parties at the Hearing, Pennymac's *Motion to Dismiss* is GRANTED and this Court does hereby make the following findings of fact and conclusions of law supplementing its August 29, 2025, *Order Granting Pennymac Loan Services, LLC's Motion to Dismiss Adversary Proceeding*:

## FINDINGS OF FACT

1.  Plaintiff instituted this action on June 26, 2025, by filing his *Complaint to Determine Validity of Lien, for Declaratory Relief, Damages for Federal Statutory Violations, and Fraud on the Court* [dkt. 1] as relates to certain real property located at 2570 3rd Avenue Huntington, WV, 25703 (the "Property").

2.  Plaintiff became record owner of the Property by Deed dated July 22, 2020, signed August 10, 2020, and recorded in Deed Book 1431 at Page 348 on August 20, 2020, with the County Commission of Cabell County, West Virginia. The Property is subject of a Deed of Trust dated August 19, 2020, which is signed by Plaintiff and was recorded with the County Commission of Cabell County, West Virginia, on August 20, 2020, in Trust Deed Book 2792 at Page 313. Mortgage Research Center, LLC dba Veterans United Home Loans is identified in the Deed of Trust as the lender, with Mortgage Electronic Registration Systems, Inc. as nominee for the lender and beneficiary of the Deed of Trust. By Assignment of Deed of Trust executed July 21, 2023, and

2

recorded July 21, 2023, with the County Commission of Cabell County, West Virginia, in Assignment Book 130 at Page 516, Mortgage Electronic Registration Systems, Inc. assigned the Deed of Trust to Pennymac. Plaintiff transferred the Property to The Murphy Family Irrevocable Trust by Quit via West Virginia Quit Claim Deed signed February 25, 2025, and recorded with the County Commission of Cabell County, West Virginia on February 25, 2025, in Quitclaim Deed Book 1519 at Page 175.

3. Plaintiff previously instituted two state court actions in the Circuit Court of Cabell County, West Virginia, challenging the standing of Pennymac and Seneca to foreclose on the Property.

4. On February 25, 2025, Plaintiff instituted Civil Action No. 25-C-72, as Trustee for The Murphy Family Irrevocable Trust, asserting causes of action against defendants herein for Quiet Title, Fraud, Wrongful Foreclosure in violation of the Securities and Exchange Commission and RESPA, and seeking Declaratory Relief ("Murphy I"). Murphy I was dismissed with prejudice by order entered April 16, 2025, by Circuit Court Judge Paul T. Ferrell. Plaintiff subsequently moved for relief from the order dismissing Murphy I pursuant to West Virginia Rule of Civil Procedure 60(b) on June 5, 2025. Plaintiff's Rule 60(b) motion was denied by order entered June 9, 2025. Plaintiff did not appeal Murphy I.

5. Plaintiff instituted a second civil action in the Circuit Court of Cabell County, West Virginia, on June 4, 2025, Civil Action No. 25-C-237, seeking a Temporary Restraining Order and Preliminary Injunction enjoining foreclosure against the Property ("Murphy II"). Plaintiff's request for relief in Murphy II was denied based upon *res judicata* by order entered June 25, 2025. Plaintiff did not appeal Murphy II.

6.  After being denied the relief sought in Murphy I and Murphy II, Plaintiff instituted this Adversary Proceeding asserting the same causes of action and/or seeking the same relief that he was denied in Murphy I and/or Murphy II.

7.  Pennymac timely moved to dismiss this Adversary Proceeding on July 28, 2025, arguing that this Court lacked subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. Notwithstanding the lack of subject matter jurisdiction, Pennymac also asserted that Plaintiff's Adversary Proceeding should be dismissed because of the *res judicata* doctrine, Plaintiff failed to schedule his claims in the underlying bankruptcy, Plaintiff lacks standing, and/or Plaintiff's complaint was deficient pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

8.  This Court agrees with each of the basis underlying Pennymac's *Motion to Dismiss*.

## CONCLUSIONS OF LAW

**The Rooker-Feldman Doctrine.**

9.  The *Rooker-Feldman* doctrine prohibits lower federal courts from reviewing final judgments of state courts. *See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Specifically, the United States Supreme Court has stated that the *Rooker-Feldman* doctrine prohibits a case from proceeding on a complaint if it is (1) brought by a plaintiff who lost in a state-court proceeding; (2) the plaintiff is complaining of injuries that were caused by the judgments of a state court in the state-court proceeding; (3) the state-court's judgments were "rendered," or entered, by the state court before the plaintiff filed his or her complaint in the federal district court; and (4) the plaintiff's complaint invites the federal district court to review the state-court's judgments and to reject them. *Exxon*, 544 U.S. at 284 (finding that *Rooker-Feldman* is

4

confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments"). *See also Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

10. Each of the four (4) elements of the *Rooker-Feldman* doctrine are met here.

11. Plaintiff lost in state court twice. Plaintiff first instituted Murphy I, which included causes of action against Pennymac and Seneca for Quiet Title, Fraud, Wrongful Foreclosure in violation of the Securities and Exchange Commission and RESPA, and Declaratory Relief. The Circuit Court of Cabell County, West Virginia, dismissed Murphy I with prejudice. Plaintiff sought relief from the order dismissing Murphy I pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure, but such relief was denied. Plaintiff did not appeal Murphy I.

12. Plaintiff subsequently instituted Murphy II seeking the same relief requested in Murphy I. Murphy II was dismissed summarily on June 5, 2025, based on the doctrine of *res judicata*. Plaintiff did not appeal Murphy II.

13. Plaintiff's Complaint in this Adversary Proceeding followed whereby Plaintiff sought declaratory judgment invalidating the Deed of Trust encumbering the Property and precluding Pennymac and/or Seneca from foreclosing on the Property. Plaintiff's Complaint in this Adversary Proceeding is the functional equivalent of asking this Court to reverse the state court's judgments dismissing Murphy I and refusing to provide the relief Plaintiff sought in Murphy II. This Court is not, however, a forum for collateral review of final state court judgments.

14. The state court judgments in Murphy I and Murphy II were entered and final prior to Plaintiff filing this Adversary Proceeding. The dismissal of Murphy I occurred on April 16, 2025, with Plaintiff's request for Rule 60(b) relief rejected by order entered June 9, 2025. The

rejection of the relief sought in Murphy 2 followed on June 5, 2025. This Adversary Proceeding was not instituted until June 26, 2025—after both state court rulings were final. There are no ongoing state court proceedings and no pending appeals.

15. Plaintiff now reasserts the same claims in Murphy I and Murphy II to this Court. The "injury" Plaintiff identifies in this Adversary Proceeding are not independent of Murphy I or Murphy II. Rather, Plaintiff's claimed damages are consequences of having lost in state court.

16. And the Circuit Court of Cabell County judgments were final prior to initiation of this Adversary Proceeding. The final dismissal of Murphy I occurred on April 16, 2025, with rejection of the relief sought in Murphy 2 following on June 5, 2025. Plaintiff did not file for bankruptcy or initiate this adversary proceeding until June 26, 2025—after both state court rulings were final.

17. Plaintiff asserts that this adversary proceeding involves new federal claims under RESPA, 11 U.S.C. § 506, and § 105. This Court disagrees. These claims were raised in state court in Murphy I and were rejected. *Rooker-Feldman* precludes a party from repairing a lost case by reasserting it in federal court under different statutory citations.

18. Based upon the *Rooker-Feldman* doctrine alone, Plaintiff's Adversary Proceeding must be dismissed.

**Doctrine of *Res Judicata.***

19. "Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir.2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). Three elements must be satisfied for *res judicata* to apply. "[T]here must be: (1) a

6

final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Id*. at 354–55. This Court finds that each of these elements are satisfied here.

20. First, the Circuit Court of Cabell County dismissed Murphy I with prejudice on April 16, 2025, after Plaintiff brought claims for quiet title, fraud, wrongful foreclosure, declaratory judgment, and RESPA violations. A dismissal with prejudice for failure to state a claim constitutes a final judgment on the merits under West Virginia law. *See Sprouse v. Clay Communication, Inc.,* 158 W. Va. 427, 211 S.E.2d 674 (1975). Similarly, the relief sought by Plaintiff in Murphy II was summarily denied June 9, 2025.

21. Second, the parties in the state court litigation are the same or in privity with those named in this adversary proceeding.

22. Third, the causes of action asserted in this adversary proceeding are either identical to those raised in the state court cases or arise from the same nucleus of operative facts. Plaintiff again challenges the validity of the lien, Defendant's standing to foreclose, and the sufficiency of documentation presented in support of the foreclosure. He repeats his RESPA claim, his fraud-based arguments, and his request for declaratory relief, all of which are legal theories which the Circuit Court of Cabell County, West Virginia, has already adjudicated.

23. Plaintiff argues that his Complaint in this Adversary Proceeding cites to new or different statutes (e.g., 11 U.S.C. § 506, 12 U.S.C. § 2605). While Plaintiff may now cite new or different statutes, his citation variance does not save his case. "For purposes of *res judicata* or claim preclusion, "a cause of action" is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. The test to determine if the issue or cause of action involved in the two suits is identical is to

7

inquire whether the same evidence would support both actions or issues." *Slider v. State Farm Mut. Auto. Ins. Co.*, 210 W. Va. 476, 478, 557 S.E.2d 883, 885 (2001) at Syl. 4.

24. The doctrine of *res judicata* bars Plaintiff from relitigating issues before this Court that were previously adjudicated in Murphy I and Murphy II. Separate and distinct from the *Rooker-Feldman* doctrine, the doctrine of *res judicata* supports the granting of Pennymac's Motion to Dismiss.

**Plaintiff Lacks Standing.**

25. In order to have standing to pursue an action, a plaintiff must have a present, substantial interest, as distinguished from a mere expectancy or future, contingent interest. *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 871 (4th Cir. W. Va. 1991) *citing Osborn v. Bank of United States*, 22 U.S. (9 Wheat) 738, 6 L. Ed. 204 (1824).

26. Plaintiff lacks standing for two (2) distinct and separate reasons.

27. First, Plaintiff does not own the Property. Plaintiff conveyed his interests in the Property to an irrevocable trust by Quit Claim Deed signed February 25, 2025, and recorded with the County Commission of Cabell County, West Virginia on February 25, 2025, in Quitclaim Deed Book 1519 at Page 175.

28. Second, Plaintiff's claims are pre-petition claims that accrued before Plaintiff filed for Chapter 7 bankruptcy on June 26, 2025. Plaintiff did not, however, identify his claims in his bankruptcy schedules.

29. Under applicable Bankruptcy Code, all of a debtor's interests in property at the time their petition is filed, including any claims they may have, must be added to the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). The debtor must disclose all potentially meritorious claims, not simply those that are guaranteed to succeed. *See In re McMellon*, 448 B.R. 887, 891 (S.D. W. Va. 2011)

8

*citing Casto v. Am. Union Boiler Co. of W. Va.,* No. 2:05-cv-00757, 2006 U.S. Dist. LEXIS 14781, 2006 WL 660458 ("Pursuant to this duty to disclose, debtors 'must disclose all potential causes of action including litigation that is likely to arise in a non-bankruptcy setting.'" (quoting *In re Baldwin,* 307 B.R. 251, 265 (M.D. Al. 2004)). Under the bankruptcy statutes, "a debtor is under a duty both to disclose the existence of pending lawsuits when [they] file[] a petition in bankruptcy and to amend [their] petition if circumstances change during the course of the bankruptcy." *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 793, 391 U.S. App. D.C. 21 (D.C. Cir. 2010); *see* 11 U.S.C. § 541(a)(7). "[A] debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

30. This Court finds that Plaintiff lacks standing to pursue the claims asserted in this Adversary Proceeding because (1) Plaintiff does not own the Property, and (2) Plaintiff did not disclose his claims in his bankruptcy schedules. Accordingly, separate and distinct from the *Rooker-Feldman* doctrine and the doctrine of *res judicata*, Pennymac's *Motion to Dismiss* should be granted.

**Federal Rule of Civil Procedure 12(b)(6).**

31. Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Twombly*, the Court performs a two-prong analysis. *Id*. First, it identifies the allegations in the complaint that are "not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.

*Iqbal* at 664. Next, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 680.

32. A plaintiff cannot rely on "threadbare recitals" of a cause of action's elements supported by mere conclusory statements. *Iqbal* at 663. A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly* at 544. Facial plausibility is only established where the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 663. To survive a party's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." *Twombly* at 570. This Court should not give mere conclusions "a presumption of truth." *Iqbal* at 663.

33. This Court finds that each of the causes of action set forth in Plaintiff's Complaint in this Adversary Proceeding fail to meet threshold pleading requirements. The Complaint lacks factual content from which reasonable inference may be drawn that Pennymac or Seneca may be liable to Plaintiff..

### *Count I – Declaratory Judgment: Standing and Lien Invalidity*

34. Plaintiff's first claim seeks a declaration that Pennymac and Seneca lack standing to enforce the subject note and Deed of Trust, and that the lien itself is invalid.

35. As a threshold matter, declaratory judgment is not an independent cause of action, it is a form of relief dependent upon the existence of a viable underlying claim. *See CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011).

36. Plaintiff does not allege any facts that would call into question the enforceability of the lien or the standing of the Defendants. Plaintiff pleads no facts to establish a defect in the

10

assignment chain of the Deed of Trust, nor any non-conclusory facts to suggest that Pennymac or Seneca legal enforcement authority.

37. Accordingly, this Court finds that Count I of Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).

### *Count II – Violation of RESPA (12 U.S.C. § 2605(e))*

38. Plaintiff's RESPA claim fails as a matter of law because Plaintiff lacks standing to assert it in his individual capacity. While Plaintiff may remain contractually liable under the note, he no longer owns the subject property in his individual capacity, having transferred title to an irrevocable family trust. The family trust took the property subject to the *Deed of Trust*. If the validity of the *Deed of Trust* is to be challenged, then that challenge should come from the family trust. The Complaint, however, does not allege that Plaintiff is asserting this claim as a trustee or in any representative capacity on behalf of the trust.

39. Accordingly, this Court finds that Count II of Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).

### *Count III – Fraud Upon the Court / Misrepresentation*

40. Plaintiff's third count baldly alleges that Pennymac and Seneca Trustees committed fraud upon the court by submitting documents in prior proceedings that were "unsupported," "fabricated," or "unverified." These allegations do not satisfy the requirements of Federal Rule of Civil Procedure 9(b), which mandates that fraud be pled with particularity, including the "who, what, when, where, and how' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal citations omitted). Plaintiff alleges no facts identifying which documents were false, who submitted them, how they were fraudulent, or how a court may have improperly relied upon them.

11

41. Accordingly, this Court finds that Count III of Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).

### *Count IV – Equitable Subordination / Relief under 11 U.S.C. § 105*

42. In Count IV of his Complaint Plaintiff seeks to equitably subordinate the Defendants' claims pursuant to 11 U.S.C. § 510(c) and the Court's general equitable powers under § 105. The Court finds this claim is unsupported by law or fact.

43. "[E]quitable subordination is an unusual remedy which should be applied in limited circumstances." *In re Herby's Foods, Inc.*, 2 F.3d 128, 131 (5th Cir.1993); cf. *In re Fabricators*, 926 F.2d at 1464. Equitable subordination is an extraordinary remedy used to reorder creditor priorities based on egregious, inequitable conduct, such as fraud, breach of fiduciary duty, or insider misconduct. *See In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 744 (6th Cir. 2001). Plaintiff alleges none of these elements or facts to support such elements. Instead, Plaintiff suggests only that Defendants pursued foreclosure without proper documentation. This Court finds such conclusory allegation to be inadequate of requisite pleading obligations.

44. Accordingly, this Court finds that Count IV of Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).

For the reasons set forth above, the Court GRANTS Pennymac's *Motion to Dismiss* [dkt. 9] and Seneca's joinder in Pennymac's *Motion to Dismiss* [dkt. 16], and hereby DISMISSES this Adversary Proceeding with prejudice. Motions filed in this matter not addressed by separate Order are hereby MOOT.

IT IS SO ORDERED THIS THE ____ DAY OF SEPTEMBER 2025.

B. McKay Mignault, Chief Bankruptcy Judge

Prepared by:

/s/ Bryan N. Price
Bryan N. Price, Esq. (WV Bar #8846)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
Charleston, WV 25301
bprice@flahertylegal.com
*Counsel for Pennymac Loan Services, LLC*


The Clerk shall mail a copy of the entered Order to the following:

Janet Smith Holbrook
Chapter 7 Trustee
611 Third Avenue
Huntington, WV 25701

Julian Benjamin Murphy
Pro Se Debtor
2570 3rd Avenue
Huntington, WV 25703

Lakyn D. Cecil, Esquire, Bar No. 14121
Charles J. Urlacher, Esquire, Bar No. 14702
5000 Coombs Farm Drive, Suite 104
Morgantown, WV 26508
*Counsel for Seneca Trustees, Inc.*

D. Carol Sasser, Esquire, Bar No. 12709
Kim R. Gershen, Esquire, Bar No. 13342
448 Viking Drive, Suite 350
Virginia Beach, VA 23452
*Counsel for Seneca Trustees, Inc.*